## CHICAGO & EASTERN ILLINOIS RAILROAD COMPANY
### v.
### JOHN BIVANS.

*Railroads—Negligence—Ordinance as to Speed—Crossing—Variance.*

1. The charge in a declaration that a train was run unlawfully in respect to rate of speed, will fairly include all the acts of the company's servants thereon of a frightening character with reference to teams, if they were naturally incidental to such unlawful running.

2. In view of the evidence, this court holds that while the whistling in question might not have been due to the rate of speed of the train, nor incidental to it as an unlawful rate, such whistling at the time and in such proximity to the team clearly was in the case presented, and that it probably made it frightening.

3. It is competent in such cases to admit evidence as to the rate of speed a given train was run before it reached municipal limits, where the testimony is that there was no perceptible abatement thereof after reaching the same.

4. Whether a given person exercised ordinary care for his own safety under given circumstances, is a question of fact for the jury.

5. This court holds, in view of the wording thereof, that the answer of the plaintiff to a question of his counsel, as to the value of his services to himself and family through time lost, could not have prejudiced the defendant herein, and can not be considered an error that should reverse the judgment.

[Opinion filed December 3, 1891.]

APPEAL from the Circuit Court of Vermilion County; the Hon. C. B. SMITH, Judge, presiding.

Messrs. W. H. LYFORD and J. B. MANN, for appellant.

Mr. G. W. SALMANS, for appellee.

PLEASANTS, J. Rossville is an incorporated village in Vermilion County. Attica street runs east and west and is crossed at right angles by appellant's railroad. An ordinance declared that trains should not run through the village at a

rate of speed exceeding fifteen miles an hour. Appellee was a farmer residing three miles east of the village, and was familiar with this crossing and its surroundings. On the day he received the injury which was the subject of this suit he was hauling hay to town. About four o'clock in the afternoon, after delivering his third load that day, he weighed his wagon at the scales, some 130 feet west of the railroad, and started east, driving in a slow trot until just before he reached the track, where the team dropped to a walk. There was a deep cut just north of the street, and some cars standing on the switch west of the main track, partly on the crossing, and extending north, so that appellee, standing in his wagon, could not see a train coming from the north until he passed them. When his horses were on the track two or three short whistles were given, and they thereupon suddenly sprang forward, unmanageable, and after a few jumps the wagon struck the sidewalk, and he was thrown out.

From the evidence it might well be found that it was by hardly more, if not less, than five seconds, and only by the sudden springing forward of the frightened horses, that he escaped collision with a wrecking train of appellant which passed from the north at a rate of speed of from thirty to forty miles an hour.

He has no recollection of seeing the train at all, nor was he aware of its approach until he heard the whistle.

For the injury thus received he recovered judgment below for $1,500. No complaint was made of this amount, but a motion for a new trial, on other grounds, was overruled and exception duly taken.

The declaration states the ordinance in substance, and avers that the defendant drove the train at the rate of forty miles per hour within the corporate limits of the village, and approaching the crossing, and that said train and engine so running came close upon the wagon and horses of plaintiff, who was with proper care and caution crossing the railroad upon the highway, by means whereof they became frightened and unmanageable, and ran away, upset the wagon and threw him out.

It is claimed for appellant that what frightened the horses was not the coming of the train and engine close upon them at the rate of speed alleged, but the whistling, which was not specifically alleged as the cause; and hence that there was a fatal variance between the allegation and the proof.

We are inclined to think the distinction too fine to be recognized as substantial in this case. Plaintiff testified that he did not hear the train until it whistled, and that his horses did not jump until then, but immediately thereupon did. Hence he inferred it was the whistle that frightened them. He could not know, however, that their hearing was not better than his, and that they did not at the same time hear and become frightened by the noise of the rushing train as well as by the whistling. It is not improbable, from the evidence, that they did. But be that as it may, the charge that the train was run unlawfully in respect to the rate of speed would fairly include all the acts of appellant's servants on the train, that were of a frightening character, if they were naturally incidental to such unlawful running. The whistling here spoken of, may not have been due to the rate of speed of the train, nor incidental to it as an unlawful rate, but the whistling at the time and in such proximity to the team clearly was; and that, in all probability, was what made it frightening. From the place where it was done to the corporation limits, by the railroad, was half a mile or more, and had the train been running at a rate of speed not exceeding that allowed by the ordinance, it could not have been done at that place before the team would have been at a safe distance from the road and from the train as it passed. There was evidence also which would make it appear that this whistling was done for the purpose of hurrying the team out of the way of the train, and would have been wholly unnecessary but for the excessive speed of the train. It may have been unfortunate for the company that its engineer and fireman swore that plaintiff had started his horses to run away, by whipping them, before they reached the track, for they encountered a flat contradiction by four or five disinterested witnesses who had ample means of knowledge, observed his conduct and that of the team, and were entirely positive in their denial.

Complaint is made of the admission of testimony as to the rate of speed at which the train was running before it reached the village limits. Had it stood alone it would have been irrelevant, and yet harmless; but the witnesses stated further that they continued to observe it until it got within those limits and could see no abatement. Their opportunity for judging of the rate being better when they first observed it, we see no impropriety in their stating it with what followed.

Plaintiff was asked by his counsel, "What were your services for the time you lost reasonably worth to you and to your family," and permitted to answer over objection. It is insisted that this was error which should reverse the judgment, on the authority of C. & E. I. R. R. Co. v. Roberts, 35 Ill. App. 137. That was an action against the company for alleged negligence causing the death of plaintiff's wife, and the question put to him was, "What were the services of this lady worth to you and the children per year?" and the witness answered "$400 at least." He was entitled to recover only the pecuniary damages resulting from her death. The court said that by this ruling the witness was permitted "to decide for the jury one of the material questions in the case;" and that "aside from the failure of the question to confine the injury to the fair and reasonable pecuniary value, it is not a fit subject for expert evidence." We think it manifest, the question in the case at bar was understood as referring to the pecuniary value of his services alone, and it expressly called for their reasonable value. The data on which the opinion of the witness was based had been given; his age, physical condition, occupation and the size of his farm. The answer was given as an opinion. The jury, having the data, were enabled to form their own opinion, both of the actual value of his services and of the weight of his opinion of them. Thus the witness was not permitted to decide this question for them. Besides, his answer was: "Well, I say this, that for just my services alone, a dollar and a half per day; may be that is high and may be it is not. I could not say." We think such an answer could not have prejudiced the defendant.

The remaining point urged for reversal is that the plaintiff

did not use ordinary care for his own safety; did not look and listen for the train as he ought. He saw all that was visible from his position before he got on the track, but no train coming. He knew that no regular was due from the north about that time. This was a wrecking train, running on no schedule time. He did not hear it whistle at the usual place. Others did not, though others still say they did. Seeing nothing, hearing nothing, knowing nothing to forbid, he drove on, as probably most men would, without hesitation or special pains to ascertain that there was no danger in so doing. This was a question for the jury.

We find no material error in the record.

*Judgment affirmed.*